UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROILAND FERNANDEZ-MEDINA,

        Plaintiff,

v.

RYAN OLIVAREZ, *et al.*,

        Defendants.

CASE NO. 3:20-cv-05703-RAJ-JRC

REPORT AND RECOMMENDATION

NOTED FOR: December 9, 2022

This matter is before the Court on referral from the District Court. Plaintiff Roiland Fernandez-Medina has brought this civil rights action pursuant to 42 U.S.C. § 1983. The Court has allowed plaintiff's amended complaint to proceed on his claim of excessive force during his arrest against the individual defendants and dismissed the remaining claims and defendant Pierce County Sheriff's Department. *See* Dkts. 53–54.

Presently before the Court is defendants' motion for summary judgment. Dkt. 64. Defendants argue that plaintiff cannot present evidence to show a constitutional violation occurred as a result of the actions taken by defendants in the course of plaintiff's arrest.

Defendants present evidence that any use of force during plaintiff's arrest was not excessive and, rather, was objectively reasonable under the circumstances of this case. Although defendants provided plaintiff with a notice of this dispositive motion, plaintiff did not respond to defendants' motion for summary judgment.

After reviewing the motion and the relevant record, the Court concludes that plaintiff has failed to present evidence to rebut defendants' showing that they are entitled to summary judgment as to plaintiff's excessive force claim. Based on the evidence presented, defendants have shown that their actions during the course of plaintiff's arrest were objectively reasonable in light of the facts and circumstances confronting them. Accordingly, the Court recommends that defendants' motion for summary judgment be granted and that plaintiff's claims be dismissed with prejudice.

## BACKGROUND

### I.     Allegations of the Complaint

Plaintiff, proceeding *pro se* and *in forma pauperis* ("IFP"), filed his amended complaint in September 2020. Dkt. 6. He alleges that defendants Pierce County Sheriff's employees Deputy Olivarez, Detective Reigle, Detective Darby, Detective Rayner, Deputy Madrigal-Mendoza, Sergeant Greger, Detective Dickerson, and Deputy Nordstrom violated his constitutional rights when they arrested him in 2019. *Id*.

On October 15, 2019, plaintiff allegedly was in the parking lot of Hotel Murano in Tacoma, Washington "conducting a basic mechanical diagnostic on an acquaintance's vehicle." *Id.* at 6–7. Plaintiff alleges that, "[w]hile sitting inside the parked Mercedes doing [his] job, [plaintiff] observed an unknown van [driven by defendant Greger] smash[] into the Mercedes at

1  full speed." *Id.* at 7–8. Thereafter, plaintiff allegedly observed "several armed m[e]n aggressively
2  exiting the vehicle used in the assault." *Id.* at 8.

3  Plaintiff alleges he fled from these individuals and "jumped over a small wall to a lower
4  parking lot level, about 10 to 15 feet below." *Id.* Upon landing, he "was physically tackled and
5  further assaulted by" the plainclothes police officers. *Id.* Allegedly, the officers "piled [] on top
6  of [plaintiff] to arrest [him], [causing plaintiff's] ankle [to be] broken in two places." *See id.* at
7  9–10.

8  Plaintiff alleges that he "never committed nor was about to commit any crime" and that
9  he was "innocent" and that the officers thus lacked "probable cause . . . to detain, search[,] and
10 arrest [him]." *Id.* at 9. Likewise, plaintiff alleges that the officers engaged in an "illegal stop,
11 search[,] and seizure[] of [him]." *Id.* at 10. Further, plaintiff alleges that the officers used
12 excessive force when they crashed the van into the Mercedes and when they tackled and
13 assaulted plaintiff during his arrest. *See id.* at 9–10. In connection with these allegations,
14 plaintiff's remaining claim is one based on the use of excessive force during his arrest. *Id.*
15 Plaintiff seeks monetary damages. *Id.* at 16.

16 **II.    Defendants' Evidence**

17 Along with their motion for summary judgment (Dkt. 64), defendants have submitted
18 declarations of defendants Dickerson, Rayner, Greger, Olivarez, Madrigal-Mendoza, Darby, as
19 well as defendants' counsel. *See* Dkts. 65–72. On October 15, 2019, defendant Olivarez, a Pierce
20 County deputy sheriff, obtained a search and arrest warrant for plaintiff and his hotel room at
21 Hotel Murano in Tacoma. Dkt. 69 at 2. The warrant, which was reviewed and signed by a Pierce
22 County superior court judge, described the investigation of plaintiff for illegal activity and drug
23 trafficking through the use of a confidential informant. Dkt. 69-1, Ex. 1. Defendant Olivarez
24

noted in the warrant that, based on his training and experience, "[g]uns, firearms, rifles, pistols, shotguns, and all types of dangerous weapons are utilized by drug manufacturers, dealers, and users to protect themselves from robbery, police intervention, and for self defense, to protect their profits, assets, and narcotics, and to assist in the furtherance of their drug habits." Dkt. 69-1 at 6, Ex. 1.

On that same day, October 15, 2019, defendant Olivarez briefed officers on the operation to arrest plaintiff and carry out the search warrant. Dkt. 65-1 at 4, Ex. 1. Defendant Olivarez knew plaintiff to be a "multiple time convicted felon." *Id*. at 3. Plaintiff's criminal history includes violent crime and drug related convictions, including, first degree assault with a firearm in 1997, second degree assault with a firearm in 2004, assault for domestic violence in 2009, burglary and displaying a firearm with intent to intimidate in 2014, and possession of a controlled substance and unlawful use of a building for drug purposes in 2017. *See* Dkt. 65-2, Ex. 2.

After the briefing, officers arrived at Hotel Murano and witnessed plaintiff exit the hotel and walk to the nearby parking structure. Dkt. 65-1 at 14, Ex. 2. Plaintiff arrived at a black Mercedes that was backed into a parking spot, raised the hood of the vehicle briefly, and then got in and started it. *Id*. Defendant Olivarez then gave the order to effect the arrest, telling the arrest team to apprehend plaintiff before he could leave in the vehicle. *Id*. at 4. While carrying out the arrest, defendant Greger, who was driving the arrest team van, first pulled up to the Mercedes and bumped into the driver's side bumper into order to block plaintiff's vehicle from leaving. *Id*. at 12. Photographs of the Mercedes taken after the arrest indicate no damage to the vehicle. Dkt. 69-4, Ex. 4. The arrest team, all armed and wearing vests identified with "Sheriff," then exited the van and immediately yelled, "Police. Show me your hands." Dkt. 65-1 at 12, 14, Ex. 1.

As soon as he saw the arrest team, plaintiff jumped out of the Mercedes and ran to the back of the vehicle. *Id*. at 12. He then jumped over a small wall of the second story parking structure and landed on the concrete ground approximately 16 to 20 feet below. *Id*. at 12, 14. After landing, plaintiff got up and ran until defendant Reigle apprehended him. *Id*. at 14. She tackled him and restrained him on her own until defendant Madrigal-Mendoza arrived to assist in placing plaintiff in handcuffs. *Id*. at 8. Two other officers then arrived at the scene to also assist. *Id*. at 8. A search of plaintiff's person revealed heroin and cash in his right front pants pocket. *Id*. at 10. Police also searched plaintiff's hotel room, finding heroin, methamphetamine, two firearms, packaging materials, scales and other drug paraphernalia, and over $14,000 in cash. *Id*. at 16, 18, 20.

When plaintiff was captured by law enforcement, he complained that his ankle hurt and believed it to be broken. *Id*. at 4. Officers immediately called Medical Aid and plaintiff was taken to the Emergency Room at St. Joseph's Medical Center. *Id*. at 4; Dkt. 65-7 at 4, Ex. 7. The medical providers at the hospital noted that plaintiff had a "closed displaced pilon fracture of left tibia" as a result of "jump[ing] from building." Dkt. 65-7 at 5, Ex. 7.

Based on the evidence obtained in plaintiff's arrest and the search of his hotel room, plaintiff was charged with two counts of possession of a controlled substance with intent to deliver and two counts of unlawful possession of a firearm in the first degree. Dkt. 65-1 at 3, Ex. 1. On August 12, 2021, the Pierce County superior court entered judgment on plaintiff's guilty plea to two counts of second-degree unlawful possession of a firearm arising from this arrest. *See* Dkt. 40-1. Plaintiff was sentenced to a term of confinement of 38 months on two concurrent sentences. *Id*.

**III.    Procedural Background**

On July 29, 2020, plaintiff filed his initial complaint. Dkt. 4. On August 3, 2020, the Court reviewed the complaint and found that plaintiff had failed to state a claim. *See* Dkt. 5. The Court declined to serve the complaint, but afforded plaintiff an opportunity to file an amended complaint. *Id*.

On September 3, 2020, plaintiff filed the operative amended complaint. Dkt. 6. On October 1, 2020, after screening the amended complaint, the Court entered an order directing service. Dkt. 7. On November 2, 2020, the defendants entered a limited notice of appearance and waivers of service. Dkts. 10–19.

On November 30, 2020, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 21. In that motion, defendants argued, among other things, that the matter should be stayed pending resolution of plaintiff's underlying criminal proceeding. *Id*. After plaintiff responded to the motion (*see* Dkt. 33), and defendants replied (*see* Dkt. 34), the Court entered a report and recommendation ("R&R") granting the motion to dismiss in part, staying the matter pending resolution of plaintiff's state criminal proceedings, and denying the remainder of the motion as moot without prejudice. Dkt. 35. The District Court adopted the R&R on April 5, 2021, staying the matter and directing the parties to file joint status reports apprising the Court as to the status of plaintiff's state court proceedings. Dkt. 36.

On April 12, 2021, the Pierce County superior court entered judgment on plaintiff's guilty plea and sentenced plaintiff to a term of confinement. *See* Dkt. 40-1. Defendants filed a status report on August 27, 2021, informing the Court of the conclusion of plaintiff's criminal proceedings, requesting the matter be reopened, and renewing their motion to dismiss. Dkts. 40-1, 41. On January 14, 2022, the Court entered a report and recommendation ("R&R") dismissing

several of plaintiff's claims and dismissing as a defendant the Pierce County Sheriff's Department. Dkt. 52. The Court permitted plaintiff's excessive force claim to survive the motion to dismiss stage, and gave plaintiff an opportunity to file a second amended complaint. *Id*. The District Court adopted the R&R on February 7, 2022. Dkt. 54.

Plaintiff did not file an amended complaint. *See* Dkt. On April 5, 2022, defendants filed an amended answer. Dkt. 58. Defendants subsequently filed the instant motion for summary judgment on September 21, 2022. Dkt. 64. Defendants sent plaintiff a *Rand* Notice on that same day via U.S. mail. Dkt. 73. This *Rand* Notice informed plaintiff that defendants had filed a motion for summary judgment seeking to have plaintiff's case dismissed, and stated that if plaintiff failed to submit his own evidence in opposition, summary judgment may be entered against him. *Id*.

Plaintiff did not file a response to defendants' motion for summary judgment and did not file any declarations or exhibits refuting defendants' presentation of the relevant events. *See* Dkt. Therefore, plaintiff had failed to refute any of the facts provided by defendants.

However, it is noted that because plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). To date, plaintiff has failed to present such evidence.

In addition to plaintiff's failure to file a response to defendants' motion, plaintiff has also not filed a verified complaint—that is, one in which he declares under penalty of perjury that its contents are true and correct. *See* Dkt. 6. Such a verified complaint "may be treated as an

1 affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence." *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (internal quotations omitted); *see also Jones v. Blanas*, 393 F.3d 918, 922–23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). But allegations that are based merely on the plaintiff's belief are insufficient to oppose summary judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

## DISCUSSION

### I.   Standard of Review

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the material facts before the court and the moving party is entitled to judgment as a matter of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). The moving party is entitled to summary judgment if the evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). To determine if summary judgment is appropriate, the court must consider whether particular facts are material and whether there is a genuine dispute as to the material facts left to be resolved. Fed. R. Civ. P. 56(c). Where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden").

## II.  Fourth Amendment Claim – Excessive Force

Plaintiff alleges that defendants violated his Fourth Amendment rights when they used excessive force on him in two separate incidents: (1) the arrest team alleging crashing its van into the parked Mercedes he was sitting in; and (2) the officers' alleged tackling and piling on top of him after he fled.

"*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Conner*, 490 U.S. 386, 395 (1989) (emphasis in original). The evaluation of a Fourth Amendment excessive force claim requires a determination as to "whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (quotations omitted). To make that determination, the Court considers three factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. However, these factors are not exclusive. The Court considers the reasonableness of the force used "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Williamson*, 23 F.4th at 1151 (quoting *Graham*, 490 U.S. at 396). "It is also well-established that police officers 'are not required to use the least intrusive degree of force possible.'" *Id*. (quoting *Lowry v. City of San Diego*, 858 F.3d 1248, 1259 (9th Cir. 2017)). "When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1547 (2017).

1    Here, again plaintiff has not contested defendants' motion for summary judgment, even
2    though defendants sent him a *Rand* notice, advising him that failure to respond could result in
3    dismissal of his case. *See* Dkt. 73. Further, plaintiff has not filed a verified complaint. *See* Dkt. 6.
4    The defendants' uncontested evidence shows that the arresting officers' use of force was
5    reasonable under the circumstances. First, with respect to the allegation that the arrest team
6    unlawfully crashed its van into the parked Mercedes while plaintiff was sitting in it, the evidence
7    on summary judgment demonstrates that defendants did not use excessive force. Defendant
8    Greger, who was driving the van, knew that he was to assist in the arrest of plaintiff for the
9    serious crime of drug trafficking pursuant to a warrant and prevent plaintiff's flight from the
10   scene. Dkt. 65-1 at 4, Ex. 1. That warrant indicated that, as is commonly the case with drug
11   traffickers, plaintiff was potentially armed and dangerous. Dkt. 69-1 at 6, Ex. 1. When defendant
12   Olivarez gave the order to effect the arrest, telling officers to prevent plaintiff from leaving the
13   scene in his vehicle, defendant Greger drove the arrest team van to the Mercedes' parking spot
14   and bumped the front driver side bumper in order to prevent plaintiff from exiting that spot in the
15   Mercedes. Dkt. 65-1 at 12, Ex. 2. The photographs taken of the Mercedes after plaintiff's arrest
16   confirm that the vehicle sustained no damage as a result of that bump. Dkt. 69-4, Ex. 4. As such,
17   there is no evidence that defendants drove the van into plaintiff's Mercedes "at full speed," as
18   plaintiff alleges in his complaint. Dkt. 6 at 7–8. And on summary judgment, plaintiff has
19   presented no evidence to support a conclusion that defendants' actions with respect to bumping
20   the Mercedes in order to prevent plaintiff from fleeing in his vehicle were unreasonable in light
21   of the circumstances in front of them.
22   Second, as to plaintiff's allegation that defendants used excessive force when they
23   tackled him and piled on top of him after he fled, again the only evidence on summary judgment

REPORT AND RECOMMENDATION - 10

submitted demonstrates that defendants did not use excessive force. When plaintiff fled the Mercedes, defendants knew he was subject to a search and arrest warrant for the serious crime of drug trafficking. Dkt. 65-1 at 4, Ex. 1; Dkt. 69-1, Ex. 2. That warrant noted the likelihood that drug traffickers possess or use firearms "and all types of dangerous weapons" to protect themselves from, among other things, police intervention. Dkt. 69-1 at 6, Ex. 1. Further, defendants knew that plaintiff had a violent criminal history. *See* Dkt. 65-1 at 3, Ex. 1. When plaintiff saw the officers exit the arrest team van, armed and wearing vests identified with "Sheriff" and shouting "Police. Show me your hands," it was then that he fled and jumped over the wall onto the ground 16 to 20 feet below. *Id*. at 12, 14. The fact that he injured himself in that fall but kept running does not mean that the officer who apprehended him, defendant Reigle, used excessive force when she did so. *Id*. at 8, 14. The evidence on summary judgment shows that she took him down herself, and only later did defendant Madrigal-Mendoza and two other officers assist in restraining him in order to be handcuffed. *See id*. It was after he was restrained that plaintiff complained of an injury from the fall. *Id*. at 4. He also told medical providers at St. Joseph's Emergency Room that the injuries to his ankle were the result of his jump from the parking structure and not from a tackle or piling on by police officers. *Id*. at 4; Dkt. 65-7 at 4, Ex. 7. As such, the Court finds no evidence to support plaintiff's allegations of excessive force in the amended complaint regarding this aspect of his arrest.

In sum, with respect to both instances of excessive force alleged by plaintiff, the force used by the officers was objectively reasonable given the circumstances. The officers used force that was necessary to protect themselves, keep plaintiff under control and take him into custody. For these reasons, the Court finds defendants did not violate plaintiff's right to be free from

excessive force in the course of arrest. Accordingly, the Court recommends that summary judgment be granted in favor of defendants.

### III. IFP on Appeal

IFP status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An appeal would not be in good faith in this matter. Therefore, the Court recommends that plaintiff's IFP status be revoked for purposes of any appeal.

### CONCLUSION

The undersigned recommends that defendants' motion for summary judgment (Dkt. 64) be granted and that plaintiff's claims be dismissed with prejudice. Plaintiff's IFP status should also be revoked for purposes of an appeal.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).

Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on December 9, 2022, as noted in the caption.

Dated this 21st day of November, 2022.

J. Richard Creatura
Chief United States Magistrate Judge